HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAWRENCE HUTT<br>Plaintiff,<br>v.<br>CITY OF FIFE, a municipal corporation of the State of Washington; JOHN DOE BURRUS, a Fife police officer and individually and in his official capacity; JOHN DOE SMITH, a Fife police officer and individually and in his official capacity; RANDY LARSEN, a Fife police officer and individually and in his official capacity;<br>Defendants. | Case No. 06-5117RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I. SUMMARY

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. #18). The Defendants seek a ruling that the Plaintiff's claims are procedurally barred by the statute of limitations and defective service of process. Additionally, the Defendants contend that even if the Plaintiff's claims were timely filed and served, they are without merit.

Having reviewed the parties' submissions, the Court hereby GRANTS Defendants' Motion and DISMISSES this case. The reasons for the Court's order are set forth below.

## II. BACKGROUND

The following alleged facts are set forth in a light most favorable to the non-moving party:

On January 3, 2003, the Plaintiff was driving northbound on the 1500 block of 33rd Avenue East in

Fife, Washington. *Complaint*, p. 2 (Dkt. #3). He was driving a borrowed vehicle owned by Clifford Hatton. The Plaintiff failed to use his turn signal when changing lanes. Officer Smith of the Fife Police Department activated his emergency lights. *Id*. The Plaintiff pulled into a local truck stop. *Id*.; *Declaration of Lawrence Hutt*, p. 2 (Dkt. #22). Officer Smith asked the Plaintiff for his driver's license, vehicle registration, and proof of insurance. *Id*. The Plaintiff provided Officer Smith with an expired driver's license. *Id*. The Plaintiff denied driving with a suspended or revoked license. *Id*. In addition, he gave Officer Smith an insurance card that did not have his name on it.

Officer Smith returned to his vehicle to write-up citations for the Plaintiff's 1) failure to signal while changing lanes; 2) driving without a valid driver's license; and, 3) failure to maintain liability insurance. During this time, Officer Burrus arrived in another police car and spoke with Officer Smith. *Complaint*, p. 2 (Dkt. #3). At that point, the Plaintiff exited his vehicle. *Declaration of Lawrence Hutt*, p. 3 (Dkt. #22). Officer Smith instructed him to return to the car and Plaintiff complied. *Id*. When Officer Smith called to verify the Plaintiff's information, he learned that the Plaintiff's license had expired in 1996. He also contacted the Plaintiff's insurance company and learned that he did not have liability insurance.

Officer Smith returned to the Plaintiff's vehicle and informed him the Plaintiff of three citations. *Id*. Officer Smith had the Plaintiff sign the citation book and instructed him to respond by following the instructions on the back of the citations. *Id*. Officer Smith then told the Plaintiff that he was free to leave. *Id*.

Before the Plaintiff could drive away, Officer Smith informed him that his vehicle was going to be impounded. *Id*. The Plaintiff was "outraged" and "loudly asked" for an explanation. *Id*. Officer Smith explained that a car gets impounded when he pulls someone over who does not have a valid driver's license. *Id*., p. 4. The Plaintiff asked to speak with a supervisor. *Id*.

Officer Smith called his supervisor, Sergeant Randy Larsen, for assistance. *Id*. When Officer

Larsen arrived at the scene, he introduced himself and explained that because the Plaintiff was driving without a valid driver's license, the police were permitted to impound the vehicle. *Id*. A tow truck arrived shortly thereafter to take the Plaintiff's car. *Id*. Officer Larsen instructed the Plaintiff to get out of the car. *Id*. The Plaintiff then asked if he was under arrest to which Officer Larsen said he was not. *Id*. The Plaintiff then asked Officer Larsen why he was being ordered out of the vehicle. *Id.* Officer Larsen responded that the car was being impounded. *Id*. The Plaintiff asked, "why did he have to obey an order of a police officer to get out of a car legally parked on private property." *Id*. According to the Plaintiff, Officer Larsen responded by placing his hand on his handgun in its holster and told the Plaintiff that if he did not get out of the car that he would take him out of the car and take him to jail. *Id*. Plaintiff complied.

As the Plaintiff's vehicle was being loaded onto the tow truck, the Plaintiff stood next to his car with his hands in his pockets. *Id*., p. 5. Officer Smith yelled at the Plaintiff to take his hands out of his pockets. *Id*. The Plaintiff did not obey, but instead asked why he had to remove his hands from his pockets if he was not under arrest. *Id*. Officer Smith walked towards the Plaintiff and asked him once again to remove his hands from his pockets. *Id*. The Plaintiff complied but raised his voice and asked him why he had to remove his hands from his pockets to which Officer Smith said, "Officer Safety." *Id*.

The Plaintiff admits to becoming "outraged" and asking "are you saying [that] I'm a threat to your safety?" *Id*. Officer Smith did not respond, so the Plaintiff asked the question a second time. *Id.* At that point, Officer Smith instructed the Plaintiff to keep his hands where he can see them. *Id*. Because his vehicle was being towed, Officer Smith offered the Plaintiff a ride anywhere within Fife city limits. *Id*. The Plaintiff refused.

The Plaintiff's friend and the vehicle's owner, Mr. Hatton, picked up the Plaintiff at the truck stop. They went to the impound lot and picked up the car. The vehicle was never impounded.

On March 3, 2006, the Plaintiff filed this lawsuit against the City of Fife as well as Officers Burrus,

Smith and Larsen. He asserts 42 U.S.C. § 1983 claims against all Defendants for violating his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution. *Complaint*, p. 4 (Dkt. #3). Plaintiff also asserts state law claims against Officer Burrus for false arrest, assault, and unlawful taking of property. *Id*. Finally, he asserts a claim for failure to supervise and train employees against the City. *Id*. The Defendants answered the Complaint on September 8, 2006. (Dkt. #9).

On February 7, 2008, the Plaintiff *sua sponte* filed an Amended Complaint[1] with this Court, which added allegations of kidnaping and malicious prosecution against all Defendants. (Dkt. #26). Moreover, he amended the complaint such that all state law claims were asserted against all Defendants.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words,

---

[1]The Plaintiff has not complied with the Federal Rules of Civil Procedure for amending a Complaint. Under Fed.R.Civ.P. 15(a), a party may amend its pleading as a matter of course "before being served with a responsive pleading." (emphasis added). After such a pleading is filed, a party may amend its pleading "only with the opposing party's written consent...[or] with leave of court, which is to be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2) (emphasis added). In this case, the Plaintiff did not amend the Complaint before the Defendants filed their Answer. In fact, the Plaintiff waited nearly two years to amend his complaint. The Court is not inclined to permit these amendments in part because of prejudice to the Defendants and in part because the new kidnaping claim is time-barred by the statute of limitations, pursuant to Wash.Rev.Code 4.16.100(1). The new claim for malicious prosecution is without merit. *See infra.* p. 11.

"summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

**B. The Plaintiff's § 1983 Claims**

In order for a Plaintiff to obtain relief under 42 U.S.C. § 1983, he must prove that the defendants deprived him of a constitutional right and that the Defendants were acting under the color of law. 42 U.S.C. § 1983. In this case, the Plaintiff claims that the Defendants deprived him of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. *Complaint*, p. 4 (Dkt. #3).[2] The Court has examined each claim and determines that the Plaintiff either concedes the claim or the claim is without merit. A search of the uncontested record reveals that the conduct of the Defendants was at all times, lawful, reasonable and appropriate under the circumstances

1. The Plaintiff Concedes as to his Fifth, Sixth and Eighth Amendment Claims

The Plaintiff expressly states in his response to summary judgment that "[he] is presently willing to withdraw his claims under the Fifth, Sixth, and Eighth Amendments." *Plaintiff's Memo of Law & Arguments Opposing Summary Judgment*, p. 17 (Dkt. #21). Therefore, the Court GRANTS the Defendants' Motion on these issues and DISMISSES the Plaintiff's Fifth, Sixth, and Eighth Amendment § 1983 claims.

2. The Plaintiff's Fourteenth Amendment Claim is Without Merit

It is unclear as to whether the Plaintiff views the Fourteenth Amendment claim as a substantive or procedural due process issue. If the Plaintiff claims that the traffic stop was a violation of substantive due process, the issue is whether the Plaintiff's traffic stop was appropriate. This analysis is provided in the Fourth Amendment section, where the Court discusses whether the seizure of the Plaintiff and the

---

[2] The Plaintiff's characterizes these claims as "conspiracy to violate civil rights...under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments." *Complaint*, p. 4 (Dkt. #3). Based on the allegations set forth in the Plaintiff's Complaint and the response to this motion, it is unclear whether he is asserting an independent conspiracy claim. The Court will nevertheless address each constitutional claim as if it were a § 1983 action before it addresses the conspiracy claim under 42 U.S.C. § 1985(3).

impoundment of the vehicle were permissible. *See infra.* p. 7. If the Plaintiff claims that the taking of his vehicle violated his procedural due process rights, the argument fails because the Defendants did not commit any tortious conduct. Officer Smith pulled over the Plaintiff for not using his turn signal, which is a violation of RCW 41.61.305(1). He then conducted a routine traffic stop. When Officer Smith learned that the Plaintiff had not had a valid driver's license since 1996, he appropriately cited the Plaintiff and had the vehicle towed and impounded. His conduct is permitted under RCW 46.55.113(2)(g).

The Court therefore GRANTS the Defendants' Motion on this issue and DISMISSES the Plaintiff's Fourteenth Amendment claim.

3. The Conspiracy to Violate an Individual's Civil Rights

For a Plaintiff to prevail on a conspiracy claim under federal civil rights statutes, he must prove that two or more people conspired to deprive a person of his civil rights. 42 U.S.C. §1985(3). Further, a Plaintiff must demonstrate a deprivation of that right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3356-57, 77 L.Ed.2d 1049 (1983); *Griffith v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

In this case, the Plaintiff has not demonstrated that the Defendants conspired to deprive him of his civil rights. Moreover, the Plaintiff has not even alleged that he is a member of a protected class (i.e., race, color, gender, creed, national origin). The Court therefore GRANTS the Defendant's Motion on this issue and DISMISSES the Plaintiff's conspiracy claim.

4. The Plaintiff's Fourth Amendment Claim is Without Merit

It is undisputed that a traffic stop is lawful when a police officer has probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). Under Washington law, failure to signal is a traffic violation: "[n]o person shall turn a vehicle or move right or left upon a roadway...without giving an appropriate signal." RCW 41.61.305(1). Officer Smith had probable cause to

believe that the Plaintiff committed a traffic violation and appropriately conducted a routine traffic stop. *See State v. Lemus*, 103 Wash.App. 94, 99, 11 P.3d 326 (2000) (The police officer had probable cause to stop the defendant when his vehicle crossed the lane line before he signaled.). Indeed, Plaintiff does not dispute that he failed to use his turn signal; instead he claims he was not required to do so.

The Plaintiff also claims that the continued detention of the vehicle beyond the initial traffic stop was unreasonable and excessive. Specifically, he contends that Officer Smith's questioning of him exceeded the scope of the traffic stop because Officer Smith did not need to verify the Plaintiff's proof of insurance. The Court rejects this contention. In evaluating the reasonableness of an investigatory stop, courts should examine "whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 20, L.Ed.2d 889 (1968). In this case, the Plaintiff admits that the traffic stop only took five minutes. *Complaint*, p. 2 (Dkt. #3). Further, the Plaintiff admits that Officer Smith conducted an appropriate traffic stop when he asked for the Plaintiff's license, registration and proof of insurance and wrote up the three citations. *Id*. The Plaintiff concedes in his Response that Officer Smith had the right to check the status of his license. The expansion of the stop was reasonable and not excessive because the Plaintiff provided Officer Smith with an expired driver's license and an insurance card that did not have his name on it. It was reasonable for Officer Smith to verify the status of the Plaintiff's insurance since it is a violation of RCW 46.30.020 to operate a motor vehicle without liability insurance.

Finally, the Plaintiff contends that taking and impounding his vehicle was a Fourth Amendment violation. The Plaintiff cites to the *In re Impoundment of Chevrolet Truck* decision, noting that an officer's decision to impound a vehicle is discretionary. *In re Impoundment of Chevrolet Truck*,148 Wash.2d 145 (2002). While the decision to impound a vehicle is a discretionary one, Officer Smith was acting in

accordance with Washington state law, which provides:

> [A] police officer may take custody of a vehicle, at his or her discretion, and provide for its prompt removal to a place of safety under any of the following circumstances:
>
> (g) Upon determining that a person is operating a motor vehicle without a valid driver's license in violation of RCW 46.20.005 or with a license that has been expired for ninety days or more.

RCW 46.55.113(2)(g). The Plaintiff freely admits he has not had a valid driver's license since 1996. In addition, Officer Smith was permitted to seize the vehicle because the Plaintiff was the only person in the vehicle and permitting him to continue driving would be a violation of the law. The Court therefore GRANTS the Defendants' Motion for Summary Judgment and DISMISSES the Plaintiff's Fourth Amendment claim.

a. Even if the Defendants Committed a Fourth Amendment Violation, They Are Entitled To Qualified Immunity.

The Defendants argue that they are immune from suit under the principle of qualified immunity. Government officials are "entitled to some form of immunity from suits for damages." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). State actors other than those such as judges, legislators, and the President of the United States, are covered under the principle of qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "[P]ublic officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow*, 457 U.S. at 806.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (internal quotations omitted)). The principle is an affirmative defense, and must be plead by the defendant official. *Harlow*, 457 U.S. at 806. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified

immunity is entitled to dismissal before the commencement of discovery." *Mitchell*, 472 U.S. at 526. The privilege of qualified immunity is immunity from suit rather than a defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Saucier*, 533 U.S. at 200-201.

In determining whether a defendant official is qualifiedly immune from suit, the Court examines two distinct questions. First, "the Court must determine, as a threshold question, whether the Plaintiff has shown the deprivation of a constitutional right." *Deorle v. Rutherford*, 272 F.3d 1272, 1278 (9th Cir. 2001). The initial inquiry is whether, in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201.

Only if the Plaintiff has shown that he has been deprived of a constitutional right will the Court continue to the second element, "whether the right violated was clearly established in a particularized sense: the relevant dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Doerle*, 272 F.2d at 1278-79. If the allegations are sufficiently established and there is still no violation of the constitutional right, however, the analysis ends there, and "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

In this case, the Plaintiff has not proved that the Defendants violated the Fourth Amendment. *See supra*. p. 7. Even if the Court determines that the Defendants committed a Fourth Amendment violation, they are entitled to qualified immunity. First, the Defendants conducted an appropriate, routine traffic stop. Second, a reasonable police officer would conclude that the traffic stop and impoundment was appropriate. Finally, the Plaintiff does not provide any evidence in his Response that no reasonable officer could have come to the same conclusion.

**C. The Plaintiff's State Law Claims for False Arrest and Assault**

The Plaintiff asserts several state claims against the Defendants, including false arrest and assault.[3] The Court has considered the statute of limitations for each claim. These claims are untimely.

1. The Claims for False Arrest and Assault Are Time-Barred[4]

Pursuant to RCW 4.16.100(1), an action for false arrest and assault must be brought within two years of the date the claimant knew or should have known the factual basis for the claim. The last day the Plaintiff could have brought these claims was January 3, 2005, two years after the events of January 3, 2003. Instead, the Plaintiff filed his Complaint on March 9, 2006, nearly three years after his traffic stop. Defendants' Motion on this issue is GRANTED and Plaintiffs' False Arrest and Assault claims are DISMISSED.[5]

**D. The Plaintiff Lacks Standing to Assert a Claim for the Unlawful Taking of Private Property**[6]

The Plaintiff does not own the vehicle that was taken by the Fife Police Department. As such, an unlawful taking of private property claim should be brought by the automobile owner, not the Plaintiff.

---

[3]The Plaintiff included additional claims against the Defendants including intentional infliction of emotional distress and defamation in response to this motion. *Plaintiff's Memo of Law & Arguments Opposing Summary Judgment*, p. 18 . (Dkt. #21). The Court will not rule on the merits of these claims for a number of reasons. First, these allegations were not included in the Complaint. Second, the Plaintiff did not add these allegations to the Amended Complaint, which was recently filed. Even if the Court considered the claims, they would fail because 1) a claim for defamation is time-barred by virtue of the statute of limitations, which is two years, pursuant to RCW 4.16.100(1); and, 2) the Plaintiff has not provided any evidence of intentional infliction of emotional distress to allow for this claim to survive Summary Judgement.

[4]The Court notes that Plaintiff asserted a claim for kidnaping in his Amended Complaint. (Dkt. #26). The Court will not permit the Plaintiff from taking advantage of the relation back doctrine under Fed.R.Civ.P. 15(c). Under that rule, the Plaintiff may have been permitted to add the claim if the statute of limitations had not run. Here, kidnaping is identical to false imprisonment, and the statute of limitations is two years. RCW 4.16.100(1).

[5]The Court is aware that the Plaintiff initially filed a Motion for Leave to Proceed in informa pauperis on March 3, 2006. (Dkt. #1). As a matter of equity, Courts will toll the statute of limitations where the Plaintiff's informa pauperis motion is under consideration. *See, e.g., Westfield v. Rhodes-Perdue Furniture Co. Of Greensboro, N.C., Inc.*, 109 F.R.D. 106 (W.D. N.C. 1985). Even with tolling, the claims for false arrest and assault still were not timely filed.

[6]In opposing this motion, the Plaintiff asserts a conversion claim against the Defendants. *Opposing Summary Judgment*, p. 18 (Dkt. #21). The Court is not inclined to rule on the merits of this claim for two reasons. First, this allegation was not appropriately included in the Complaint or Amended Complaint. Second, the Plaintiff lacks standing to assert a conversion claim because he was not the owner of the impounded vehicle.

The Court GRANTS the Defendants' Motion on this issue and DISMISSES the Plaintiff's claim for the Unlawful Taking of Private Property.[7]

**E. The Plaintiff's Claim for Malicious Prosecution**

To maintain an action for malicious prosecution, the Plaintiff must prove that 1) the prosecution claimed to have been malicious was instituted or continued by the defendant; 2) there was want of probable cause for the institution or continuation of the prosecution; 3) the proceedings were instituted or continued through malice; 4) the proceedings terminated on the merits in favor of the plaintiff or were abandoned[8]; and, 5) the plaintiff suffered injury or damages as a result of the prosecution. *Loeffelholz v. Citizens for Leaders With Ethics and Accountability Now (C.L.E.A.N.)*, 119 Wash. App. 665, 669, 82 P.3d 1199 (2004). The Plaintiff bears the burden of proof to establish these elements. *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wash. 2d 485, 498, 125 P.2d 681 (1942). The existence of probable cause is a complete defense to an action of malicious prosecution. *Hanson v. City of Snohomish*, 121 Wash.2d 552, 563-64, 852 P.2d 295 (1993).

This claim fails because the Defendants had probable cause to conduct the traffic stop, cite the Plaintiff, and have his car impounded. Probable cause exists when an officer has reasonable grounds to believe a suspect has committed or is committing a crime due to the surrounding circumstances. *State v.*

---

[7]Even if the Plaintiff has standing, there are other grounds to dismiss this claim. The Plaintiff asserted the unlawful taking of private property claim against Defendant Burrus who was never served. Despite the efforts of this Court to give the Plaintiff additional time to serve all the parties, (Dkt. #6), and the Court ordering the Plaintiff to serve all Defendants by August 16, 2006, the Plaintiff never effected service on Defendant Burrus. As a consequence, the Court would in any event dismiss all claims against Burrus.

The Court is not inclined to permit the Plaintff to effect service on Defendant Burrus. Even if he effects service at this point in litigation, the claim for the unlawful taking of private property claim is time-barred. The Plaintiff cannot refile this claim because they are now barred by the statute of limitations. Under Fed.R.Civ.P. 4(m) "[i]f a defendant is not served within 120 days after the complaint is filed, the court...must dismiss the action." The Court is not inclined to permit additional time for the Plaintiff to serve Defendant Burrus because the Court has given enough time for the Plaintiff to effect service on the parties and actually ordered the Plaintiff to have all the parties served by August 16, 2006.

[8]Although there are a number of reasons why the Plaintiff cannot support a viable claim for malicious prosecution, one critical reason is that he lost in the municipal proceeding and had to pay to the traffic fines. In malicious prosecution cases, the underlying proceeding must result in favor of the plaintiff.

*Gonzales*, 46 Wash. App. 338, 395, 731 P.2d 1101 (1986). The Plaintiff failed to signal when making a lane change, which violates RCW 41.61.305. Moreover, when Officer Smith verified whether the Plaintiff's license was suspended or revoked, he learned that the Plaintiff's license had been expired since 1996. The Plaintiff had six prior citations for driving with an expired license. These circumstances show that the Defendants had probable cause to impound the Plaintiff's vehicle.

The Court GRANTS the Defendants' Motion on this issue and DISMISSES the Plaintiff's claim for malicious prosecution.

**F. The Plaintiff's Claim for Negligent Supervision and Training is Without Merit**

The Defendants claim in their Motion for Summary Judgment that the Plaintiff expressly stated that he had no intentions of proceeding with this matter. The Defendants support this claim by excerpting a deposition, which is included in the Declaration of Shannon Ragonesi. The relevant quote is the follows:

> Well, originally, I was going to do a training [claim]. I was going to add a claim, too, about failure to train and properly supervise, et cetera, and then I thought, no, let's just stick with what we're sure of and not get off on to where you need expert witnesses and all the real expensive–with this incident, again, talking about balancing things out...it's not my intention to litigation anything as technical as that.

Exh. H of the Declaration of Sharon Ragonesi,(78:2-78:25)(Dkt. #19). The Court is persuaded by this statement and actually searched the record for this quote, which was nowhere to be found. The Court looked at the referenced deposition citation and did not find this statement. Because the Court must view all evidence in light of the non-moving party, the Court is unwilling to consider this evidence at this point for purposes of ruling on this motion.

The Court will nevertheless grant the Defendants' motion on this claim because the facts, when considered in the light most favorable to non-moving party, show that no tortious conduct occurred. The Defendants conducted an appropriate, routine traffic stop because the Plaintiff failed to use his signal when making a lane change. When the police discovered that the Plaintiff did not have a valid driver's license,

they towed and impounded his car, all in accordance with Washington law. Absent tortious conduct, this claim is without merit. The Court hereby GRANTS the Defendant's Motion for Summary Judgment on the Plaintiff's negligent supervision and training claim.

**G. The Defendants' Motion to Strike the Plaintiff's Briefing**

The Defendants' Reply asks the Court to strike the Plaintiff's opposition briefing because it was filed three days after the filing date. The Court has the discretion to grant or deny the motion to strike. *Canady v. Erve Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7 (D. D.C. 2004) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992)). Motions to strike are generally disfavored, *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005), and as a matter of policy, courts prefer to resolve a case on the merits. Consistent with that policy, this Court prefers to have all of the parties' arguments before it. Therefore, the motion to strike is DENIED.

**IV. CONCLUSION**

For the reasons discussed above, the Defendants' motion for summary judgment is GRANTED as follows:

1) The Court GRANTS the Defendants' Motion and DISMISSES the Plaintiff's Fifth, Sixth, and Eighth Amendment claims under 42 U.S.C. § 1983.

2) The Court GRANTS the Defendants' Motion and DISMISSES the Plaintiff's Fourteenth Amendment claim.

3) The Court GRANTS the Defendants' Motion and DISMISSES the Plaintiff's conspiracy claim, pursuant to 42 U.S.C. § 1985(3).

4) The Court GRANTS the Defendants' Motion and DISMISSES the Plaintiff's Fourth Amendment claim.

5)The Court GRANTS the Defendants' Motion and DISMISSES and Plaintiff's state law False Arrest and Assault claims.

6) The Court GRANTS the Defendants' Motion and DISMISSES the Plaintiff's state law Unlawful Taking of Private Property Claim

7) The Court GRANTS the Defendants' Motion and DISMISSES the Plaintiff's state law claim for malicious prosecution.

8) The Court GRANTS the Defendant's Motion and DISMISSES the Plaintiff's claim for negligent supervision and training.

There are no remaining claims and the Court hereby DISMISSES this action.

DATED this 22nd day of February 2008

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE